**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**KELLY LEWIS, individually and as proposed Administrator of the Estate of EMANUEL DEVINE SULLIVAN,**

Plaintiff,

-against-

**THE CITY OF NEW YORK,**

Defendants.

Case No.: 23-CV-7594

**COMPLAINT**

Plaintiff KELLY LEWIS, individually and as proposed Administrator of the Estate of EMANUEL DEVINE SULLIVAN, by her attorneys, Rickner PLLC, complaining of the Defendants, alleges, upon information and belief and personal knowledge:

## NATURE OF THE CASE

1. This is a civil rights action brought against the City of New York ("City") for the continued civil rights violations at Rikers Island. The City violated Emanuel Devine Sullivan's ("Sullivan") rights under the Constitution of the United States and the Constitution of the State of New York, and committed torts actionable under the common laws and statutes of the State and New York, causing his death on May 28, 2022.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 1983 for violations of Plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States,

Plaintiff's rights under the Constitution of the State of New York, and the common laws of the State and New York.

3. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

4. Pursuant to New York State General Municipal Law § 50-e, Plaintiff filed a timely Notice of Claim with the New York City Comptroller and the Comptroller designated the claim as number 2022PI024378.

5. Plaintiff appeared for a hearing under New York State General Municipal Law § 50-h on August 25, 2023

6. Plaintiff's claims were not adjusted by the New York City Comptroller's Office within the period of time provided by statute.

## JURY DEMAND, JURISDICTION & VENUE

7. Plaintiff demands a trial by jury.

8. Venue is properly laid in the Southern District of New York because the Plaintiff's claims arose in the County of the Bronx.

## PARTIES

9. Sullivan was, at all times relevant to this action, a resident of Bronx County in the State of New York, and his Estate, which will be administered by his mother, Kelly Lewis, is handled by the surrogate's court in the County of the Bronx.

10. Defendant the City of New York is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain Rikers Island through the New York City Department of Correction, which acts as its agent and for which it is ultimately responsible.

11. Defendant the City of New York assumes the risks incidental to the maintenance of Rikers Island and the employment of correction officers.

**EMANUAL SULLIVAN'S DEATH**

12. On May 28, 2022, Sullivan was detained in the notorious Rikers Island jail complex at the Anna M. Kross Center ("AMKC"), 6 Upper South, in cell number 22.

13. Sullivan was locked into his cell on May 27, 2022 at 11:35 p.m.

14. Sullivan did not come out of his cell for breakfast or lunch, which was strange, and he was observed sleeping a lot.

15. Sullivan handed another detained person his food tray at 2:19 p.m.

16. After Sullivan returned his food tray, multiple detained people were looking into his cell, apparent that they were worried about him.

17. During the next several tours, correction officers walked right by his cell and did not look in, even though Sullivan had been sleeping excessively and was known to have an opiate use disorder, was prescribed methadone, and was having medication compliance issues.

18. Since being detained in cell 22, his cell had never been searched even a single time. The last search of the cell was on May 20, 2022, before Sullivan was detained there.

19. At 4:02 p.m., another detained person told a correction officer that Sullivan was not moving, and he was soon discovered unresponsive and was, most likely, already dead.

20. The cause of death was an opiate overdose. He was only 20 years old.

21. Sullivan died because he was addicted to opiates— which were and continue to be readily available at Rikers Island—and due the City's deliberate indifference to the longstanding opiate use and overdose crisis in its jails, and the related negligence in the operations, control, and supervision of Rikers Island and those who work there.

**FIRST CLAIM FOR RELIEF:**
***MONELL* LIABILITY UNDER 42 U.S.C. § 1983**
**AGAINST THE CITY OF NEW YORK**

22. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

23. The City of New York has a longstanding pattern, practice, and *de facto* policy of improperly staffing Rikers Island; failing to properly hire, train, supervise, and manage qualified correction officers and other DOC staff; and failing to create or implement adequate policies and procedures to address the drug epidemic in the City's jails, or the participation of DOC staff in promulgating the black market of controlled substances coming into Rikers.

24. The City's pervasive failures to train and supervise staff were laid bare during the pandemic, when staff simply stopped showing up to work. The DOC employees that remained on the Island were, and continue to be, ill-equipped to handle the staffing crisis.

25. Overdoses in custody peaked in 2021 during the COVID-19 pandemic, when staffing shortages were at their zenith.[1]




[1] Jan Ransom and Jonah E. Bromwhich, "Tracking the Deaths in New York City's Jail System," NY Times (Jul 23, 2023), available at https://www.nytimes.com/article/rikers-deaths-jail.html (citing unpublished DOC data, including the graph pictured above).

26. The City's failure to manage its staff has only compounded the overdose crisis. While the City employs more than sufficient staff (at a rate approximately seven times higher than the national average in relation to the jail population), the haphazard ways in which City manages that staff are well documented.

27. The federal monitor in *Nunez v. City of New York*, No. 11 cv 5845 (S.D.N.Y.) has reported to this District that the DOC's "[f]acilty rosters are disorganized, are constantly adjusted and are difficult to decipher." This chaotic system makes it "extremely difficult, if not impossible, to clearly track where all scheduled staff [are] assigned," let alone properly control the flow of drugs into the facility or adequately respond to overdoses as they occur. [2]

28. The Monitor continued: "What is most notable and very alarming about the current state of affairs is that the deterioration of basic security protocols and denial of basic services and protections coincides with a spike in employee absenteeism that began in April 2021. Excessive and unchecked staff absences has led to other officers having to work double and triple shifts, further compromising the safety of the Facilities." 76.

29. As a result of this chaotic mismanagement of staff, lack of adequate training of corrections officers, and absence of effective leadership in the DOC, the overall conditions of confinement on Rikers have fallen well below minimal constitutional standards. Even as the staffing crisis began to subside, the management of that staff did not, and a high number of drug overdoses and deaths continue as a result.

---

[2] Special Report of the *Nunez* Independent Monitor at 41, ¶12, *Nunez*, No. 11 cv 5845 (S.D.N.Y. Mar. 16, 2022), ECF No. 438.

30. For example, Between September 1, 2021 and August 31, 2022, 31 people died from drug overdoses inside New York's prison and jail systems; more than double the national average.[3] Of these 31 deaths across the state, approximately 13% occurred in the City's jails.[4]

31. Since January of 2021, there have been at least nine deaths in the City's jails which were attributable to confirmed or suspected drug overdoses.[5]

32. Between January 2021 and June 2022, there were at least 431 non-fatal overdoses or suspected overdoses in city jails. [6]

33. Despite this alarming rate of drug use and fatalities on Rikers over the last several years, little has been done to address the number of drugs coming into the City's jails. In 2023, raid in a Rikers unit uncovered at least 110 sheets of Fentanyl in one search, demonstrating the DOC's continued failure to prevent contraband from coming into its jails.[7]

34. DOC Commissioner Louis Molina has readily admitted that the jails became inundated with drugs due to the department's failure to follow their own protocols: "When so much stuff has been allowed to enter our system over two years that none of those basic security

---

[3] *See* New York State Office of the Attorney General ,Office of Special Investigation Second Annual Report Pursuant to Executive Law Section 70-b, at 39 (Oct. 1 2022), *available at* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://ag.ny.gov/sites/default/files/2022_osi_annual_report.pdf.

[4] The victims of the overdoses in City jails during this 12-month period include, at a minimum, Taraz Youngblood, age 38; Emanuel Sullivan, age 20; Anibal Carrasquillo, age 39; Elijah Muhammad, age 31.

[5] Courtney Gross, "NY1 Investigation: Fatal drug overdoses rise on Rikers Island," Spectrum News NY 1 (Oct. 6, 2022) *available at* https://ny1.com/nyc/all-boroughs/public-safety/2022/10/06/ny1-investigation--fatal-drug-overdoses-rise-on-rikers-island.

[6] *See* NYC Council presses DOC commissioner on reasons for contraband drugs entering jails," NY Daily News (Oct. 25, 2022), *available at* https://www.nydailynews.com/new-york/nyc-crime/ny-contraband-drugs-rikers-council-hearing-20221025-5gbrsgeffzcr3pdliplytirr4u-story.html.

[7] *Supra*, n.5.

protocols were being followed we are digging ourselves out from a situation that is very serious."[8]

35. But drugs are not coming in through the mail alone. Since 2017, at least 25 DOC officers and employees charged with bringing in contraband to the City's jails, a direct result of the City's longstanding failure to properly hire, train, and supervise DOC staff.[9]

36. In fact, DOC staff is not even scanned for such contraband on their way to work, despite concerns raised by the City Counsel over this policy.[10] During the pandemic, when visits from civilian family and friends were suspended, there were twice as many reports of drug seizures within the City jails.[11]

37. After the fourth custodial death of 2023, the City announced that DOC staff members would be disciplined or suspended based on an internal investigation revealing significant procedural violations leading to the overdose and death of Felix Taveras, age 40.[12]

38. A recent federal civil rights lawsuit on behalf of Jose Mejia Martinez, age 34, who died of an overdose in City custody on June 10, 2021, alleges that DOC staff left Martinez "alone and unconscious in his cell for more than three hours after staggering around a jail in plain view of correction officers."[13]

---

[8] *Id.*

[9] *Id*.

[10] *Supra,* n.6.

[11] *Id*.

[12] Craig McCarthy, "Rikers inmate dies of overdose, DOC staffers facing suspension," NY Post (Jul 4, 2023), *available at* https://nypost.com/2023/07/04/rikers-inmate-dies-of-overdose-doc-staffers-facing-suspension/.

[13] Raven Blau, "Lawsuit Claims Rikers Officers Ignored Detainee Who Died Following Overdose," The City (Jun. 15, 2023), *available at* https://www.thecity.nyc/2023/6/15/23762757/lawsuit-rikers-martinez-death-overdose.

39. As a direct and proximate result of the City's longstanding pattern, practice, and *de facto* policy of improperly staffing Rikers Island; failing to properly hire, train, supervise, and manage qualified correction officers and other DOC staff; and failing to create or implement adequate policies and procedures to address the drug epidemic in the City's jails, or act to quell the participation of DOC staff in the black market of controlled substances coming into Rikers, Plaintiff, any others like him, were deprived of their civil rights protected by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

40. As a result of this unconstitutional conduct, Sullivan lost his life.

**SECOND CLAIM FOR RELIEF:**
**NEGLIGENCE, NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING AGAINST THE CITY OF NEW YORK**

41. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

42. The City of New York has, for years, negligently managed Rikers Island, and has negligently hired, screened, retained, supervised, trained, and disciplined the correction officers who worked there.

43. The City of New York has a duty to care for, house, and protect people detained at Rikers Island.

44. The City of New York has entirely failed to meet their duty to the people detained at Rikers Island.

45. The acts and conduct of the City were the direct and proximate cause of Sullivan's death.

46. As a result of the above conduct, by the correction officers in the City's employ, the City is liable for punitive damages.

47. The City of New York is liable for the conduct of the correctional correction officers and any damages they caused under the doctrine of *respondeat superior*.

**THIRD VIOLATION OF ARTICLE I, § 12 OF THE NEW YORK STATE CONSTITUTION AGAINST THE INDIVIDUAL DEFENDANTS AND THE CITY OF NEW YORK**

48. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

49. Such conduct breached the protections guaranteed to plaintiff by the New York State Constitution, including but not limited to, Article 1, §§ 5, 6, and 12.

50. As a direct and proximate result of the City's deprivations of Sullivan's rights, privileges, and immunities guaranteed by the New York State Constitution.

51. As a result of the above tortious conduct, Plaintiff lost his life.

52. As a result of the above unconstitutional conduct, by the correction officers in the City's employ, the City is liable for punitive damages.

53. The City of New York is liable for the conduct of the correction officers and any damages they caused under the doctrine of *respondeat superior*.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the Individual Defendants, as well as the City of New York:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empaneling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
August 25, 2023

Rickner PLLC

By: /s/ Rob Rickner

Rob Rickner

14 Wall Street, Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*